**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| George Foreman Enterprises, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06 C 3853 |
| -vs- | ) | |
| | ) | SENIOR U.S. DISTRICT JUDGE |
| Z Trim Holdings, Inc., | ) | GEORGE W. LINDBERG |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff George Foreman Enterprises, Inc. ("GFME") commenced this action against defendant Z-Trim Holdings, Inc. ("Z-Trim") for breach of contract in connection with a deal the parties made in which Mr. George Foreman ("Mr. Foreman") would promote the sale of Z-Trim's zero calorie fat replacement ingredient. Specifically, Counts I and II of the complaint ask this court to grant GFME specific performance of the contract or damages arising out of breach of the contract. Counts III and IV of the complaint seek quasi-contractual relief in the form of claims for promissory estoppel and unjust enrichment. Z-Trim has moved for summary judgment on Counts I, II, III, and IV. For the reasons set forth below, Z-Trim's motion will be granted in part and denied in part.

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The court must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 150 (2005). The

moving party bears the initial burden of demonstrating that no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

On November 23, 2005, GFME and Z-Trim signed a Letter of Agreement ("the Agreement") in which the parties agreed to jointly market and promote the sale of Z-Trim's zero calorie fat replacement ingredient. The Agreement provided, in relevant part:

    1.    A new limited liability company ("NEWCO") shall be created and shall be owned 50.1% by GFME and 49.9% by [Z-Trim]. NEWCO shall be created and the joint venture between GFME and [Z-Trim] shall be documented after GFME's satisfactory completion of its due diligence.

    2.    GFME shall contribute to NEWCO the rights to use George Foreman's name and likeness in connection with the sale and promotion of Z-Trim. . . .

    . . . .

    13.    GFME and [Z-Trim] recognize and acknowledge that the final approval of the total transaction contemplated herein, shall be subject to the appropriate proxy filing as well as regulatory and shareholder approvals. However, [Z-Trim], Greg Halpern, the [Z-Trim] directors and the company insiders agree to vote their shares and use their best efforts to obtain shareholder approval.

    14.    Within 60 days from the date of this Letter GFME may, after completing a food analysis of Z-Trim assisted by an independent third party, terminate this Letter and have no further obligations to [Z-Trim]. Additionally, within 60 days from the date of this Letter GFME may, after completing its due diligence by meeting with food manufacturers, terminate this Letter and have no further obligations or liability to [Z-Trim]; however GFME may only so terminate in the event that after completing its due diligence with regard to the various food companies working on projects that could incorporate Z-Trim, it becomes apparent to GFME that the parties will be unable to secure sufficient contracts utilizing Z-Trim and George Foreman together in a future

product campaign.

      15.    Within 30 days of completion of due diligence by the parties, George Foreman will make himself available . . . to do a photo shoot with various brand name products that will be mocked up with the Z-Trim Logo where such photos will be used to pitch the idea of George Foreman with Z-Trim on such brands to the major food companies that manufacture them. . . . The photos shall be the property of [Z-Trim] provided, however, in the event this Letter is terminated for any reason and/or the final Transaction is not consummated, [Z-Trim] shall return all of the photos of George Foreman to GFME.

      16.    This Letter contains the entire understanding between the parties hereto with respect to the Transaction and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such Transaction.

      . . . .

      21.    Provided GFME does not terminate this Letter as provided in paragraph 14 hereof, GFME and [Z-Trim] shall, within 90 days from the date of this Letter, enter into a definitive agreement incorporating the terms of this Letter and such other provisions customary in transactions of this type. Either Party may terminate this Agreement in the event of material breach by the other party, upon giving at least 30 days' written notice to the other Party, during which 30-day period the Party notified of breach shall have the opportunity to cure the breach, for any breach susceptible of cure.

Some time in early December 2005, the agreed-upon photo shoot took place at George Foreman's residence in Huffman, Texas. At the conclusion of this photo shoot, GFME and Z-Trim agreed that Mr. Foreman would approve each use of his photographs by Z-Trim, allowing Mr. Foreman to retain editorial control of when and how the photographs would be used. Z-Trim's representative left the photo shoot with the photographs.

The parties did not execute the definitive agreement that was contemplated by the November 23, 2005, Agreement within ninety days, so on February 22, 2006, the parties agreed to extend that time period until March 16, 2006. By March 16, 2006, the parties had still not

executed the definitive agreement required by the Agreement, so they agreed to extend the time period for doing so until April 28, 2006. On April 18, 2006, Z-Trim proposed a company structure which eliminated the limited liability company contemplated by the Agreement. On April 24, 2006, GFME rejected Z-Trim's alternative proposal and sent drafts of an amended Joint Venture Agreement and an amended Limited Liability Company Agreement to Z-Trim. From this point on, the relationship between the parties deteriorated, and the parties now dispute whether the Agreement was an enforceable contract or merely a letter of intent to enter into an enforceable contract. Assuming the Agreement is an enforceable contract, the parties also dispute whether that contract expired by its own terms.

Z-Trim contends that it is entitled to summary judgment because there is no genuine issue of material fact with respect to whether the Agreement is an enforceable contract. Z-Trim asserts that, as a matter of law, the Agreement is not an enforceable contract. To determine if the parties intended the Agreement to be a binding contract, this court must examine the parties' "objective manifestations of intent" as set forth in the Agreement. *See Empire Mfg. Co. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir. 1989). As the Seventh Circuit has stated, 'One of the most difficult areas of contract law concerns the enforceability of . . . preliminary agreements." *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275, 276 (7th Cir. 1996). "If . . . the offers appear to include all terms essential to the deal and manifest the parties' mutual intent to be bound by those terms, or at least are ambiguous in that respect, then whether or not a binding agreement exists is a question that must be resolved at trial." *Ocean Atlantic Corp. v. Aurora Christian Schools, Inc.*, 322 F.3d 983, 996 (7th Cir. 2003).

GFME asserts that, based on the language of the Agreement there is a genuine issue of material fact regarding what the parties intended, and that Z-Trim is not entitled to judgment as a matter of law. For instance, the Agreement states, directly above the parties' signatures, the following: "If the foregoing correctly sets forth your understanding, please so indicate by signing an enclosed counterpart of this Letter and returning it to [Z-Trim], whereupon it will constitute a binding agreement between [Z-Trim] and GFME." The language "constitute a binding agreement" suggests that the parties intended to be bound by the Agreement. The termination clause in Paragraph 14, as set forth above, similarly manifests an intent to be bound by the Agreement, as it would have been unnecessary if the Agreement were merely a letter of intent to be bound. The merger clause in Paragraph 16 and the amendment provision in Paragraph 18 also indicate that there was intent to be bound by the Agreement.

While there are provisions of the Agreement that arguably support finding that it is not an enforceable contract, these are not sufficient to establish, as a matter of law, that the Agreement is not an enforceable contract. The language of the Agreement is at least ambiguous with respect to whether the parties intended to be bound by it. This is an issue that must be determined by the trier of fact. If the parties intended to be bound by the Agreement, then it is an enforceable contract, and GFME may recover if it can prove that Z-Trim breached that contract. *See Pilat v. Loizzo.*, 835 N.E.2d 942, 945 (Ill. App. Ct. 2005). If, on the other hand, the parties did not intend to be bound by the Agreement, then it is not an enforceable contract and GFME cannot prove that Z-Trim breached the contract. *See Id.*

Z-Trim's motion for summary judgment is denied with respect to GFME's breach of contract claim (Count II).

Next, Z-Trim contends that this court should grant summary judgment on GFME's specific performance claim (Count I) because GFME cannot prove that Z-Trim breached an enforceable contract. For the same reasons this court denied Z-Trim's motion with respect to GFME's breach of contract claim, the motion for summary judgment is denied with respect to GFME's specific performance claim. Z-Trim further argues that even if GFME could prove its breach of contract claim, summary judgment should be granted with respect to this claim because specific performance is an extraordinary remedy that is only granted when there is no other adequate remedy at law. *Abrams v. Rapoport*, 516 N.E.2d 943, 946 (Ill. App. Ct. 1987). Z-Trim has not established that there is no genuine issue of material fact with regard to GFME's specific performance claim, so summary judgment on this claim is denied.

Z-Trim also asks this court to grant its motion for summary judgment on GFME's promissory estoppel claim (Count III) because GFME has included in its allegations for this cause of action that the parties "have entered into a valid and enforceable agreement." Promissory estoppel is an alternate theory of recovery that would allow GFME to recover damages from Z-Trim should GFME prove unsuccessful on its breach of contract claim. The promissory estoppel claim and the breach of contract claim are mutually exclusive. *See Prentice v. UDC Advisory Servs.*, 648 N.E.2d 146 (Ill. App. Ct. 1995). This is because in order to be successful on its breach of contract claim, GFME must prove that there is an enforceable

contract between the parties, yet to succeed on its promissory estoppel claim, GFME must prove that there is no enforceable contract between the parties.

There are two flaws in GFME's promissory estoppel claim. First, as Z-Trim points out, GFME, by incorporating all preceding paragraphs of its complaint (those pertaining to its breach of contract claim and specific performance claim) in its claim for promissory estoppel, GFME alleged that there is an enforceable contract between the parties. This would preclude GFME from recovering on a promissory estoppel theory. Second, in its prayer for relief in its promissory estoppel claim, GFME states, "[GFME] respectfully requests that judgment be entered against . . . Z-Trim . . . ordering that the . . . Agreement is valid, enforceable and in effect granting to GFME an award of attorney's fees, costs, interest and such other relief as this Court deems appropriate." If this court were to grant GFME's prayer and hold the Agreement valid and enforceable, then GFME could not recover under a promissory estoppel theory. Accordingly, this court grants Z-Trim's motion for summary judgment with respect to GFME's promissory estoppel claim (Count III).

Lastly, Z-Trim asks this court to grant its motion for summary judgment with respect to GFME's unjust enrichment claim (Count IV). This is an alternate theory of recovery should GFME be unable to recover under its breach of contract theory, which has been sufficiently pled under federal notice pleading. *See generally Fed. R. Civ. P. 8(e)(2)*. For the foregoing reasons, this court denies Z-Trim's motion for summary judgment with respect to GFME's breach of contract claim. Until it is determined whether GFME can recover on its breach of contract

7

06 C 3853

claim, it is premature to address GFME's unjust enrichment claim. Therefore, Z-Trim's motion for summary judgment with respect to this claim is denied.

ORDERED: Z-Trim's motion for summary judgment on Count I, Count II, and Count IV is denied. Z-Trim's motion for summary judgment on Count III is granted.

ENTER:

_____
GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: April 17, 2007